UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE: DOUBLE GREEN PRODUCE, INC.,

                              Appellant,

        v.

CARRIE SHU-CHUEN KONG,

                              Appellee.

No. 24-CV-5093 (KMK)

OPINION & ORDER

Appearances:

Victor Wen-Li Tsai, Esq.
Flushing, NY
*Counsel for Appellant*

Michelle L. Trier, Esq.
Genova, Malin & Trier, LLP
Wappingers Falls, NY
*Counsel for Appellee*

KENNETH M. KARAS, District Judge:

Double Green Produce, Inc. ("DGP" or "Appellant") appeals from the June 4, 2024 Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court Order"), dismissing its adversary proceeding against Carrie Shu-Chuen Kong, debtor in the underlying bankruptcy proceedings ("Kong" or "Appellee"), granting summary judgment to Kong, and declaring that Kong's debt owed to DGP is dischargeable pursuant to various provisions of 11 U.S.C. §§ 523(a) and 727(a). (*See* Not. of Appeal (Dkt. No. 1).)[1] For the reasons set forth below, the Bankruptcy Court Order is affirmed.

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record. Citations to transcripts reference the internal page and line numbers therein.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' Bankruptcy Local Rule 7056-1

statements, (*see* Appellee's 7056-1 Statement of Undisputed Facts ("Appellee's 7056-1")

(Adversary Proceeding Dkt. No. 60-1); Appellant's 7056-1 Statement of Undisputed Facts

("Appellant's 7056-1") (Adversary Proceeding Dkt. No. 62); Appellee's 7056-1

Counterstatement of Undisputed Facts ("Appellee's Counter 7056-1") (Adversary Proceeding

Dkt. No. 63)), as well Appellant's adversary complaint and the admissible evidence submitted by

Appellee in connection with the Bankruptcy Court summary judgment briefing.[2]  The core facts

relevant to this appeal are undisputed.[3]

---

[2] Citations to "Adversary Proceeding Dkt. ___" are to the electronic docket in the underlying adversarial Bankruptcy Proceeding.  *See Double Green Produce, Inc. v. Kong*, No. 23-09009 (Bankr. S.D.N.Y.).

[3] "Where the Parties identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *Reyes v. Upfield US Inc.*, No. 22-CV-6722, 2025 WL 786656, at *1 n.5 (S.D.N.Y. Mar. 12, 2025) (citing *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [its] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant[ ], often speaking past [the] [d]efendant['s] asserted facts without specifically controverting those same facts. . . . [A] number of [the] [p]laintiff['s] purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendant[ ].")); *see also Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (explaining that the plaintiff's statement of undisputed facts violated the rule because it "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant, without specifically controverting those facts," and "[i]n other instances, . . . neither admits nor denies a particular fact, but instead responds with equivocal statements"); *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (noting that the plaintiff's statement of undisputed facts "does not comply with the rule" because "it adds argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the] plaintiff has been compelled to make").

1.  <u>Appellee's Dealings with Appellant</u>

In 2016, Appellee operated a produce delivery business, iFresh, and in the following two years, formed the entities iFresh Corp. and iFresh International Corp. (together with iFresh, "iFresh"). (Appellee's 7056-1 ¶¶ 4, 5 n.1.) Appellee created a private Facebook group in 2016 to promote her produce delivery business. (Appellee's 7056-1 ¶ 4; Appellant's 7056-1 ¶ 4; Appellee's Counter 7056-1 ¶ 4; Adversary Proceedings Dkt. 60-3 at 6–7.) From 2018 through March 2021, Appellant was a customer of iFresh. (Appellee's 7056-1 ¶ 5; Appellant's 7056-1 ¶ 5.) Specifically, Appellee (through iFresh) imported goods and produce from China and Taiwan, which it then supplied to Appellant. (Appellee's 7056-1 ¶ 5; Appellant's 7056-1 ¶ 5; Dec. 4, 2023 Dep. of C. Kong ("2023 Kong Dep.") 107:12–10:19 (Adversary Proceeding Dkt. No. 60-5); Dep. of S. Chien ("Chien Dep.") 19:10–21:7 (Adversary Proceeding Dkt. No. 60-8).) Appellee would typically invoice Appellant for the imported goods, after which Appellant would "give [her] a schedule" for when payment would be remitted, either by "case, or check, or . . . wire transfer." (Feb. 20, 2024 Dep. of C. Kong ("2024 Kong Dep.") 230:8–12 (Adversary Proceeding Dkt. No. 60-6); *see also* 2023 Kong Dep. 107:14–10:10; Adversary Proceeding Dkt. No. 60-4 (invoices from iFresh International Corp. to Double Green Produce).)[4] From May 2020 to March 2021, there were multiple wire transfers from one of Appellant's bank accounts to Appellee's JP Morgan Chase checking account ending in 6865 ("6865 Checking Account"). (Appellant's 7056-1 ¶ 2(2); Appellee's Counter 7056-1 ¶ 2(2); *see* Adversary Proceeding Dkt. No. 62-2 (bank statements for 6865 Checking Account).)

---

[4] According to Appellee, Appellant would occasionally inform her that it did not need an invoice, at least pertaining to goods imported from Taiwan. (*See* 2023 Kong Dep. 110:10–19.)

Beginning around March 2020, Appellee volunteered her time to assist Appellant with the establishment of its e-commerce business.  (Appellee's 7056-1 ¶ 6; Appellant's 7056-1 ¶ 6.)  Around April 16, 2020, Appellee changed the name of her Facebook group to iCarrie-DG.  (Appellee's 7056-1 ¶ 7; Appellant's 7056-1 ¶ 7.)  Appellee advertised for Appellant's produce in that Facebook group and linked the purchase of those products to Appellant's e-commerce platform.  (Appellant's 7056-1 ¶ 7; Appellee's Counter 7056-1 ¶ 7.)

In August 2020, Appellee became a salaried employee of Appellant.  (Appellee's 7056-1 ¶ 8; Appellant's 7056-1 ¶ 8.)  The Parties had no written agreement outlining the terms of Appellee's employment.  (Chien Dep. 36:16–20.)  Appellee was not a signatory on any of Appellant's bank accounts and did not have the online log-in information for Appellant's bank accounts.  (Appellee's 7056-1 ¶ 10; Appellant's 7056-1 ¶ 10; 2024 Kong Dep. 230:13–22; Chien Dep. 36:21–37:22, 38:19–39:6.)  Appellant terminated Appellee's employment on March 22, 2021, (Appellee's 7056-1 ¶ 9; Appellant's 7056-1 ¶ 9), alleging that Appellee "diverted corporate assets to [her]self and . . . deliberately sought to cause irreparable damage to [Appellant]," (Adversary Proceeding Dkt. 60-7 at 31–33).

2.  <u>Appellee's Bankruptcy</u>

On March 8, 2021, Appellee transferred $230,000 from her 6865 Checking Account to a savings account ending in 2480 ("2480 Savings Account").  (Appellant's 7056-1 ¶ 2(4); Appellee's Counter 7056-1 ¶ 2(4); Adversary Proceeding Dkt. No. 62-2 at 83.)  Two years later, on February 9, 2023, Appellee transferred $2,089.73 from her 6865 Checking Account into a new checking account and, the following month, closed the 6865 Checking Account.  (Appellee's 7056-1 ¶ 2; Appellant's 7056-1 ¶¶ 2, 2(6); Appellee's Counter 7056-1 ¶ 2(6).)

A few weeks later, on March 17, 2023, Appellee filed a voluntary Chapter 7 petition. (Appellee's 7056-1 ¶ 1; Appellant's 7056-1 ¶ 1.)  Appellee did not originally list the 2480 Savings Account on her bankruptcy petition, (Appellant's 7056-1 ¶ 2(5); Appellee's Counter 7056-1 ¶ 2(5)), but later amended her filings to include it, (*see* C. Kong Aff. ¶ 22 (Adversary Proceeding Dkt. 60-2); *see* Amended A/B Schedules 3, Dkt. No. 18, *In Re Carrie Kong*, No. 23-35211 (Bankr. S.D.N.Y.)).

At the time Appellee filed her bankruptcy petition, she owned a 100% interest in the entity Orange Shop Corp. ("Orange Shop"), which she disclosed in the relevant bankruptcy filings.  (Appellee's 7056-1 ¶ 3; Appellant's 7056-1 ¶ 3; Chapter 7 Petition 12, Dkt. No. 1, *In Re Carrie Kong*, No. 23-35211 (Bankr. S.D.N.Y.).)  The checking account for Orange Shop (ending in 4362) remained open until at least November 2023.  (Appellant's 7056-1 ¶ 3; Appellee's Counter 7056-1 ¶ 3.)

B. <u>Bankruptcy Court Proceedings</u>

On May 19, 2023, Appellant initiated an adversary proceeding by filing a complaint against Appellee in the Bankruptcy Court.[5]  (Adversary Proceeding Dkt. No. 1 ("Compl.").)  In its complaint, Appellant contended that the debt Appellee owes to Appellant is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(4), 523(a)(6), and 11 U.S.C. § 727(a), as Appellee "fraudulently transferr[ed] and willfully fail[ed] to disclose assets with [the] intent to hinder, delay and defraud."  (*Id.* at 1.)

---

[5] Separate from the instant proceedings, both Parties also initiated lawsuits against each other in New York State Supreme Court.  (*See* Appellee's 7056-1 ¶¶ 12–13; Appellant's 7056-1 ¶¶ 12–13.)

After the Parties engaged in discovery, Appellee filed a motion for summary judgment. (Adversary Proceeding Dkt. Nos. 60–61.)[6]  After a hearing held on June 3, 2024, the Bankruptcy Court, per Judge Ceclia G. Morris, issued an oral ruling granting Appellee's Motion.  (App'x for Defendant-Appellee, Ex. A ("Tr.") 55:19–71:7 (Dkt. No. 7-2).)  Judge Morris held that Appellant "failed to set forth evidence that would be admissible to support [its] claim" as "[t]here was no testimony or affidavit offered from a bookkeeper of [Appellee], and [Appellant's 7056-1] counterstatement contained items—including statements—that were either conclusory or not in dispute."  (*Id.* 58:10–16.)  Judge Morris further held that Appellant "did not produce evidence" or "provide a legal basis" to support its claims under §§ 523(a)(2)(A) and (B), 523(a)(4), and 523(a)(6), (*id.* 61:17–65:7), and further, "did not produce evidence" to establish its claims under §§ 727(a)(2)(B), 727(a)(2)(3), and 727(a)(4), (*id.* 67:1–70:24).  Judge Morris thus formally granted Appellee's motion for summary judgment in a written order and dismissed the complaint.  (Adversary Proceeding Dkt. No. 66.)

Appellant timely appealed to this Court.  (Dkt. No. 1.)

## II.  Discussion

### A.  Standard of Review

District courts have jurisdiction to review final bankruptcy orders.  *See* 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges . . . ." (footnote omitted)); *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (noting that district courts have jurisdiction

---

[6] Although Appellant filed a 7056-1 statement in response to Appellee's 7056-1 statement, Appellant did not file any memorandum of law in opposition to Appellee's Motion. (*See generally* Adversary Proceeding Dkt.; Tr. 52:16–54:55 (discussing Appellant's failure to file a memorandum of law).)

to "review all final judgments, orders, and decrees . . . [of the] bankruptcy courts" (citation and quotation marks omitted)).  When a district court reviews an order of a bankruptcy court on appeal, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." *In re A.N. Frieda Diamonds, Inc.*, 633 B.R. 190, 195 (S.D.N.Y. 2021); *see also In re Kran*, 493 B.R. 398, 402 (S.D.N.Y. 2013) (same), *aff'd*, 760 F.3d 206 (2d Cir. 2014).  "A bankruptcy court's conclusions of law, by contrast, are reviewed de novo." *In re Great Atl. & Pac. Tea Co., Inc.*, 509 B.R. 430, 441–42 (S.D.N.Y. 2014) (quoting *ACC Bondholder Grp. v. Adelphia Commcn's Corp.* (*In re Adelphia Commcns Corp.*), 367 B.R. 84, 90–91 (S.D.N.Y. 2007)).  Additionally, "[a] district court reviews a bankruptcy court's order granting summary judgment *de novo*, drawing all factual inferences in favor of the non-moving party." *In re Bernard L. Madoff Inv. Sec. LLC*, No. 21-CV-2334, 2022 WL 493734, at *10 (S.D.N.Y. Feb. 17, 2022) (citing *In re Lehman Bros. Holdings Inc.*, 526 B.R. 481, 492 (S.D.N.Y. 2014)); *Sec. Inv. Prot. Corp. v. Madoff*, No. 21-CV-8678, 2022 WL 4592898, at *2 (S.D.N.Y. Sept. 30, 2022) (same).

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, the familiar rule governing summary judgment in federal district courts—that is, Federal Rule of Civil Procedure 56—"applies in an adversary proceeding."  Fed. R. Bankr. P. 7056; *see also In re Dana Corp.*, 574 F.3d 129, 146–47 (2d Cir. 2009) (same).  In turn, under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Jones v. Goodrich Pump & Engine Control Sys., Inc.*, 86 F.4th 1010, 1017 (2d Cir. 2023) (same); *In re Kran*, 493 B.R. at 402 (applying the standard of review principles of Rule 56 to a decision reviewing cross-motions for

summary judgment in an adversary proceeding).  "In deciding whether to award summary

judgment, the court must construe the record evidence in the light most favorable to the non-

moving party and draw all reasonable inferences in [its] favor." *Torcivia v. Suffolk County*, 17

F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021)

(same).

It is the movant's burden to show that no genuine factual dispute exists.  *See McKinney v.

City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022); *see also Vt. Teddy Bear Co. v. 1-800

Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (same).  "However, when the burden of proof at

trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a

lack of evidence to go to the trier of fact on an essential element of the non-movant's claim," in

which case "the non-moving party must come forward with admissible evidence sufficient to

raise a genuine issue of fact for trial in order to avoid summary judgment." *LaFontant v. Mid-

Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at *7 (S.D.N.Y. Oct. 10,

2023) (quoting *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir.

2013) (alteration adopted)).  Further, "[t]o survive a [summary judgment] motion . . . [a non-

movant] need[s] to create more than a 'metaphysical' possibility that his allegations were

correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for

trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and

cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co.

v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright

v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly

supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

B.  Analysis

In its statement of issues to be presented on appeal, Appellant asserts that the Bankruptcy Court "did not eliminate all questions of fact," "erroneously determined the issues by accepting at face value" the Appellee's interpretation of events, and further, disregarded three purported pieces of evidence raised by Appellant.  (*See* Appellant's Statement of Issues 1–2 (Dkt. No. 3-1).)  At the outset, the Court notes that Appellant's statement of issues—like its briefing—is hardly a model of clarity.  Moreover, Appellant only cites one specific discharge claim in its briefing (that under § 523(a)(6)) and only does so in a conclusory fashion.  (*See* Appellant's Br. 13 (Dkt. No. 6); *see generally* Reply (Dkt. No. 8).)  Nevertheless, because the evidence Appellant asserts was overlooked pertains to all the claims at issue, the Court will review the Bankruptcy Court's entire decision de novo and thus broadly construes the issues as: (1) whether the Bankruptcy Court erred by determining there was no genuine dispute of material fact that 11 U.S.C. § 525(a) did not bar a discharge of Appellee's debt; and (2) whether the Bankruptcy Court erred by determining there was no genuine dispute of material fact that 11 U.S.C. § 727(a) did not bar the discharge of Appellee's debt.

As discussed below, the Court concludes that the Bankruptcy Court did not err granting Appellee summary judgment on all claims.

1.  Section 523(a)

Although debtors generally may discharge their debts in Chapter 7 bankruptcy proceedings, § 523(a) of the Bankruptcy Code provides for specific circumstances where discharge may be denied.  *See generally* 11 U.S.C. § 523(a); *see also In re Marashi*, No. 17-CV-

10122, 2019 WL 120726, at *2 (S.D.N.Y. Jan. 7, 2019) (noting that, under the Bankruptcy Code, "a debtor is discharged from all debts that arose prior to the order for relief, except as provided in § 523") (internal quotation marks omitted)).  "[E]xceptions to dischargeability [under § 523(a)] 'are to be narrowly construed and genuine doubts should be resolved in favor of the debtor.'"  *In re Drummon,* No. 24-CV-1668, 2025 WL 1327191, at *4 (S.D.N.Y. May 7, 2025) (quoting *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007)).  "Nondischargeability under § 523 must be proven by the plaintiff by a preponderance of the evidence."  *In re Marashi*, 2019 WL 120726, at *2 (quoting *In re Delia*, No. 12-CV-2851, 2013 WL 5450456, at *9 (S.D.N.Y. Sept. 30, 2013)).

a.  <u>Sections 523(a)(2)(A) and (B)</u>

First, Appellant asserts that Appellee's debt is non-dischargeable under § 523(a)(2)(A) and (B) because Appellee "engaged in a scheme to deliberately falsify business transactions to embezzle monies" from Appellant "by making false pretense, false representation, and actual fraud to mask her scheme of false business records"—i.e., Appellee's alleged falsification of invoices from her iFresh business.  (*See* Appellant's Br. 10.)  The Bankruptcy Court held that Appellant produced no evidence to support its claim of fraud.  (Tr. 61:14–19.)  After reviewing the record de novo, the Court affirms the Bankruptcy Court.

First, under § 523(a)(2)(A), "false pretenses," "false representation[s]," and "actual fraud, other than a statement respecting the debtor's or an insider's financial condition," are all bases for to deny discharge.  11 U.S.C. § 523(a)(2)(A).  "To establish 'false pretenses,' a plaintiff must show either conduct or an implied misrepresentation by the debtor that was intended to defraud a creditor into turning over money or property."  *In re Delia*, 2013 WL 5450456, at *10 (citing *In re Dobrayel*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)).  Similarly, "[p]roving a 'false

representation' requires evidence of a false or misleading statement made with intent to defraud," as well as "establish[ing] justifiable reliance." *Id.* (citing first *In re Dobrayel*, 287 B.R. at 12, then *In re Gonzalez*, 241 B.R. 67, 71 (S.D.N.Y. 1999)). And to demonstrate actual fraud, one "must establish the five elements of common law fraud: (i) the debtor made a false representation; (ii) the debtor knew the representation was false at the time it was made; (iii) the representation was made with the intent to deceive the creditor; (iv) the creditor justifiably relied on the representation; and (v) the creditor was injured by the representation and suffered damages as a result." *In re Drummon*, 2025 WL 1327191, at *4 (citing *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71–72 (S.D.N.Y. 1999)); *see also In re Paige*, No. 24-CV-799, 2025 WL 99753, at *6 (D. Conn. Jan. 15, 2025) (outlining the five elements of actual fraud).

Second, under § 523(a)(2)(B), discharge may be denied if the debtor obtained the debt by using a "statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). "A statement is materially false if it 'paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *In re Simone*, No. 18-21993, 2022 WL 393359, at *26 (Bankr. D. Conn. Feb. 8, 2022) (quoting *In re Boice*, 149 B.R. 40, 45–46 (S.D.N.Y. 1992)); *In re Cedillo*, 573 B.R. 405, 421 (Bankr. E.D.N.Y. 2017) (same). "In determining whether a statement relates to a debtor's financial condition, courts agree the term is not limited to formal financial statements." *In re Cedillo*, 573 B.R. at 421 (quoting *In re Bogdanovich*, 292 F.3d 104, 112 (2d Cir. 2002)), as even "[a] statement about a single asset may constitute a statement relating to a debtor's financial condition within the meaning of 11 U.S.C.

11

§ 523(a)(2)(B)," *In re Fernandez Tineo*, No. 18-14005, 2019 WL 6339877, at *3 (Bankr. S.D.N.Y. Nov. 26, 2019) (quoting *Lamar, Archer & Coffrin, LLP v. Appling*, 138 S. Ct. 1752, 1764 (2018)). Further, "[i]t is sufficient that [d]ebtors either wrote, signed, or adopted such statement to find that the documents were written by them." *In re Kovacs*, No. 8-18-75875, 2021 WL 1603600, at *11 (Bankr. E.D.N.Y. Apr. 23, 2021) (alterations in original) (quotation marks omitted).

In other words, for either provision to apply, the "debtor must act with scienter," regardless of the method of the fraud or misrepresentation. *In re Steinberg*, No. 16-CV-4074, 2017 WL 1184314, at *4 (S.D.N.Y. Mar. 29, 2017); *see also In re Arfa*, No. 14-CV-7895, 2015 WL 5610864, at *2 (S.D.N.Y. Sept. 23, 2015) (holding that a false representation must be "made . . . with intent to deceive"); *In re Simone*, 2022 WL 393359, at * 27 (discussing the standard to prove intent under § 523(a)(2)(B)). Because fraud is difficult to prove by direct evidence, "courts may look to the totality of the circumstances, including the recklessness of a debtor's behavior, and infer whether there is intent to deceive." *In re Hartley*, 458 B.R. 145, 153 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 B.R. 635 (S.D.N.Y. 2012); *In re Simone*, 2022 WL 393359, at *27 ("[I]ntent to deceive may be inferred when the totality of the circumstances depicts deceptive conduct by the debtor." (citation omitted)). However, "mere negligence" and "poor business judgment" are insufficient to satisfy "[t]he discharge exception under Section 523." *In re Steinberg*, 2017 WL 1184314, at *4 (quoting *Sarasota CCM, Inc. v. Kuncman*, 466 B.R. 590, 594 (E.D.N.Y. 2012) (internal quotation marks omitted)).

Here, even if Appellant could satisfy the other prongs of §§ 523(a)(2)(A) and (B), there is no evidence in the record demonstrating that Appellee made any false representations, false statements, materially false writings, or engaged in actual fraud to embezzle funds from

12

Appellant.  Appellant's argument is, essentially, that: Appellee, as a supplier of Appellant, invoiced Appellant for goods; Appellee occasionally did not provide invoices to Appellant; Appellee received wires from Appellant to her 6865 Checking Account, not all of which directly matched the invoices; Appellee transferred $230,000 from her 6865 Checking Account to her 2480 Savings Account; Appellee originally did not disclose the 2480 Savings Account on her bankruptcy filings; and thus—in conclusion—Appellee must have embezzled $230,000 from Appellant and hid those funds from her creditors.  (*See* Appellant's Br. 13; Reply 6–7.)  But, as Judge Morris correctly noted, none of those facts is in dispute and Appellant points to *no* evidence suggesting that Appellee falsified any invoices, let alone that she did so with the intent to defraud.  (*See* Tr. 9:7–12:14.)  These conclusory allegations are plainly insufficient to defeat summary judgment.  *Cf. In re Chadha*, 598 B.R. 710, 721–22 (Bankr. E.D.N.Y. 2019) (finding, after trial, that a vague allegation that "provide[d] no details beyond the assertion of its alleged occurrence . . . cannot serve as a basis for a § 523(a)(2)(A) exception to discharge"); *see also Kovacs*, 2021 WL 1603600, at *9–12 (finding that conclusory allegations of fraud are "insufficient to support [] nondischargeability claim[s]" under §§ 523(a)(2)(A) and (B)).

Moreover, Appellant's conclusory claims of fraud are undermined by the undisputed evidence that Appellee was a supplier for Appellant, that Appellee invoiced Appellant for its purchases, and that Appellant paid Appellee via wire transfers, (*see* supra Section I.A.1), all of which explains why and how Appellee received money from Appellant, (*see* Tr. 9:7–12:14; *id.* 37:14–17 (Judge Morris stating that "we're looking for fraud, and you're basically saying she's not entitled to have any income from her business").)  While the evidence perhaps suggests the Parties had less than ideal system for invoicing purchases and collecting payments, the existence of such a system does not, without more, demonstrate fraud.  *See In re Drummon*, 2025 WL

1327191, at *4 (affirming a bankruptcy court's grant of summary judgment where the transfers were issue were "authorized by the terms" of "a poorly planned arrangement," because while it was "unfortunate for the [Appellant], it d[id] not constitute fraud"); *cf. In re Gumbs*, 663 B.R. 227, 240 (Bankr. S.D.N.Y. 2024) (concluding that, although the debtor's actions "may have been careless or even negligent," the "credible evidence" elicited at trial "[did] not establish the requisite intent" to deny discharge under § 523(a)); *In re DePinna*, 450 B.R. 337, 361 (Bankr. D. Conn. 2011) (denying an objection to discharge where the evidence established that debtor's actions "represent[ed] poor judgment," "not moral turpitude" (internal quotation marks omitted)); *In re Chada*, 598 B.R. at 722–23 (concluding that a "credible explanation" for the discrepancies between a profit and loss statement and a tax return, "together with the [d]ebtor's lack of knowledge about and involvement in [preparing the statements], demonstrates to the [c]ourt that the[d]ebtor did not intend to deceive [the creditor]").

Accordingly, the Bankruptcy Court correctly held that Appellee's debt was dischargeable under §§ 523(a)(2)(A) and (B), and thus, this Court affirms the grant of summary judgment.[7]

> b. Section 523(a)(4)

Next, Appellant asserts that Appellee's debt is non-dischargeable under § 523(a)(4) as Appellee was "a former fiduciary of [Appellant] as administrator of [Appellant's] e-commerce sales platform" and as such, stole money from Appellant "by wiring monies out of [Appellant's operating] account to herself." (*See* Appellant's Br. 9–10.) The Bankruptcy Court held that

---

[7] Appellant makes much of the fact that Appellee sometimes did not provide invoices for the Taiwanese goods and that the amount billed on the invoices did not match all the wire transfers, and claims that Judge Morris overlooked this evidence in rendering judgment. (*See* Appellant's Br. 4–5.) But the record demonstrates that Judge Morris explicitly considered both of these facts and correctly rejected Appellant's arguments that this evidence constituted fraud. (Tr. 20:2–21:25, 25:4–29:25 (Judge Morris noting that that Appellee had proffered explanations for this evidence and Appellant had provided no evidence to rebut those explanations).)

Appellant did not "produce any credible evidence to show that [Appellee] acted in a fiduciary capacity nor the scienter needed" to support this claim.  (Tr. 63:12–18.)  This Court agrees.

Under § 523(a), discharge may be denied "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).[8]  Thus, one method to establish a fraud or defalcation claim is to "first establish that the debtor acted while in a fiduciary capacity."  *In re Mahn*, 666 B.R. 883, 893 (Bankr. S.D.N.Y. 2025) (quoting *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998)); *see In re Jacobs*, No. 22-10132, 2024 WL 3579469, at *2 (Bankr. S.D.N.Y. July 29, 2024) ("In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.").  A mere employer/employee relationship is insufficient to establish a fiduciary relationship under § 523(a)(4).  *See In re Douglas Filardo*, No. 23-71732, 2025 WL 2214076, at *6 (Bankr. E.D.N.Y. Aug. 4, 2025); *see also Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102, 109–110 (Bankr. E.D.N.Y. 2010) (same).

To prove that a debt is non-dischargeable as "embezzlement," a creditor must show: "(1) that the creditor entrusted his property to the debtor; (2) that the debtor appropriated the property for a purpose other than that for which it was entrusted; and (3) the circumstances indicate that the debtor acted with fraudulent intent or deceit."  *In re Mahn*, 666 B.R. at 897 (citing *In re Sesum*, 662 B.R. 840, 847 (Bankr. S.D.N.Y. 2024)).  To prove that a debt is non-dischargeable as "larceny," a creditor must show: "the (1) wrongful taking of (2) property (3) of another (4)

---

[8] Although "defalcation" is not defined in the Bankruptcy Code, *In re Jacobs*, 2024 WL 3579469, at *4, it is interpreted as a "misappropriation or failure to account," *In re Acker*, 663 B.R. 432, 448 (Bankr. S.D.N.Y. 2024) (quoting *Denton*, 502 F.3d at 68); *see also In re Dilworth*, No. 18-31552, 2022 WL 987044, at *18 (Bankr. D. Conn. Mar. 31, 2022) ("[D]efalcation is the misappropriation or misuse of property or funds entrusted to a fiduciary.").

without the owner's consent (5) with intent to convert the property." *Id.* at 897–98 (quoting *In re Scheller*, 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001)).

Moreover, to make out a § 523(a)(4) claim under any prong, "fraud requires intentional deceit, and is thus akin to actual fraud." *In re Acker*, 663 B.R. at 448 (quoting *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 355 (Bankr. E.D.N.Y. 2014)); *see also In re Heinemann*, No. 19-35692, 2022 WL 17408094, at *5 (Bankr. S.D.N.Y. Dec. 2, 2022) ("Defalcation requires 'a culpable state of mind,' specifically, 'knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.'" (quoting *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013))). This "insures [sic] that the harsh sanction of non-dischargeability is reserved for those who exhibit 'some portion of misconduct.'" *Denton*, 502 F.3d at 68–69 (2d Cir. 2007) (citation omitted).

First, as Judge Morris properly concluded, there is nothing in the record to suggest that the Parties had a fiduciary relationship. (*See* Tr. 38:6–39:25.) It is undisputed that Appellee was employed by Appellant and that they had no written employment agreement that could suggest any heightened duties. (*See* Chien Dep. 36:16–20.) Accordingly, because an employer/employee relationship alone does not give rise to a fiduciary duty, Appellant cannot sustain a § 523(a)(4) claim on this ground, *see In re Douglas Filardo*, 2025 WL 2214076, at *6 ("Because the Debtor was an employee only of the [p]laintiff, he was not a fiduciary of the [p]laintiff."); *cf. In re Mahn*, 666 B.R. at 895 (concluding, on a motion to dismiss, that allegations that a debtor was an "at-will employee" of the creditor were "insufficient to support a finding of a fiduciary relationship of the kind contemplated by [§ 523(a)(4)]" (internal quotation marks omitted)).

Second, Appellant cannot survive summary judgment as to the other two prongs of § 523(a)(4) (embezzlement and larceny) as the record contains no evidence indicating that Appellee's actions were intentionally fraudulent or done with the intent to convert Appellant's property.  It is undisputed that Appellee did not have the ability to directly wire funds from Appellant's accounts, as she was not a signatory to any of its accounts nor did she have access to its online banking information.  (Appellee's 7056-1 ¶ 10; Appellant's 7056-1 ¶ 10; 2024 Kong Dep. 230:13–22; Chien Dep. 36:21–37:22; 38:19–39:6.)  Accordingly, Judge Morris correctly found that there was nothing in the record supporting Appellant's claim that Appellee "wir[ed] monies out of [Appellant's operating] account to herself."  (*See* Appellant's Br. 9–10; *see* Tr. 40:2–25.)

Moreover, to the extent that Appellant argues that Appellee converted Appellant's property by falsifying invoices, Appellant has again proffered no evidence to support this theory. Although it is undisputed that Appellee received wire transfers from Appellant to her 6865 Checking Account, and that she subsequently wired $230,000 to her 2480 Savings Account, (*see* supra Sections I.A.1–2), the mere fact that Appellee received funds from Appellant does not, by itself, show that Appellee had any intent to convert or appropriate those funds, particularly given the undisputed evidence that Appellee was an employee and supplier of Appellant and thus entitled to compensation, *see In re Sesum*, 662 B.R. at 851 (finding a debt dischargeable under § 523(a)(4) because "the evidentiary record as a whole does not prove the [d]efendant had fraudulent intent" and instead, "had an economic reason" for his actions); *see also In re Marashi*, 2019 WL 120726, at *2 ("Conversion on its own, absent an intent to defraud, does not constitute embezzlement under this provision.").  As Judge Morris noted in rejecting this very argument,

17

"[j]ust saying it was fraud is not making it fraud." (*See* Tr. 29:16–31:1.)  The Court agrees and affirms the Bankruptcy Court's grant of summary judgment on the § 523(a)4 claim.

c.  Section 523(a)(6)

Next, Appellant asserts that Appellee's debt is non-dischargeable under § 523(a)(6), as Appellee's "act of hiding $230,000 in a non-disclosed savings account which was taken from the multiple money wire transfers [Appellee] transferred from [Appellant's] operating account amounting to $1.9 million was a conversion of [Appellant's] property . . . done with intentionally [sic] and without justification or excuse." (Appellant's Br. 13.)  The Bankruptcy Court held that Appellant "failed to provide a legal basis to show that [Appellee's] actions were willful and malicious toward [Appellant] as required to support a claim under § 523(a)(6)." (Tr. 65:4–7.) Again, this Court agrees.

Discharge may be denied "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  For an injury to be considered "willful[,] . . . the injury itself must be 'deliberate or intentional,' [as] it is not enough that a deliberate or intentional act led to an injury."  *In re Williams*, No. 14-10838, 2015 WL 4366321, at *6 (Bankr. S.D.N.Y. July 15, 2015) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998)), *aff'd*, 579 B.R. 314 (S.D.N.Y. 2016); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) ("[T]he word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." (emphasis in original) (quotation marks and citation omitted)).   In other words, "[t]he actor must have intended 'the consequences of an act, not simply the act itself.'"  *In re Williams*, 2015 WL 4366321, at *6 (quoting *Kawaauhau*, 523 U.S. at 61–62).  As for the malice element, the injury must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  *Margulies v. Hough (In re*

*Margulies*), 517 B.R. 441, 451 (S.D.N.Y. 2014) (internal quotation marks omitted). "Malice may be implied by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Ball*, 451 F.3d at 69 (alteration in original) (internal quotation marks and citation omitted).

Again, Appellant has pointed to no evidence that Appellee acted willfully or maliciously, let alone any evidence that speaks to Appellee's intent. Instead, Appellant merely marries undisputed facts with conclusory allegations. (*See* Appellant's Br. 13; Reply 6–8.) As this is patently insufficient to demonstrate that Appellee willfully and maliciously injured Appellant, the Court affirms the Bankruptcy Court's grant of summary judgment on the § 523(a)(6). *See In re Drummon*, 2025 WL 1327191, at *5 (affirming a bankruptcy court's grant of summary judgment on a § 523(a)(6) claim where "the record contains no evidence that [the debtor] engaged in willfully malicious conduct vis-à-vis the [creditor]"); *cf. In re Heinemann*, 2022 WL 17408094, at *5 (denying a § 523(a)(6) claim, post-bench trial, where even though the investment advice defendant gave to plaintiff "may . . . have been reckless," the plaintiff "failed to offer any evidence of intentional deceit, and [the] [d]efendant's actions cannot be said to have amounted to fraud"); *In re Sesum*, 662 B.R. at 854 (finding no evidence of willfulness where the facts "d[id] not prove that the [d]efendant had an intent to harm the [p]laintiff; rather, the facts seem to show an intent to be promoted and make more money"); *In re Rosenfeld*, 543 B.R. 60, 77 (Bankr. S.D.N.Y. 2015) (dismissing a § 523(a)(6) claim where the creditor only made conclusory allegations of malice but "no further explanation or factual support [was] offered for a finding of the requisite aggravating factors necessary for implied malice").

2.  Section 727(a) Claims

Appellant's arguments regarding § 727(a) similarly fail.  As with § 523(a), although § 727(a) of the Bankruptcy Code provides for specific circumstances where discharge may be denied, the denial of discharge "imposes an extreme penalty for wrongdoing" and thus "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'"  *In re Mattei*, No. 23-CV-6093, 2024 WL 1598225, at *5 (S.D.N.Y. Apr. 12, 2024) (quoting *In re Jones*, 786 F. App'x 309, 312 (2d Cir. 2019) (summary order) (quotation marks omitted)), *aff'd*, No. 24-1261 2025 WL 763145 (2d Cir. Mar. 11, 2025); *see also In re Steinberg*, No. 17-CV-4724, 2018 WL 1229838, at *3 (S.D.N.Y. Mar. 8, 2018) (same), *aff'd*, 756 F. App'x 90 (2d Cir. 2019).  The objecting plaintiff "bears the burden of establishing each element of [§] 727 by a preponderance of the evidence."  *In re Davis*, No. 23-71984, 2025 WL 1448570, at *3 (Bankr. E.D.N.Y. May 20, 2025); *see also Abraham v. Stuart*, No. 15-CV-4864, 2016 WL 4045432, at *6 (E.D.N.Y. July 28, 2016) (same), *aff'd sub nom. In re Abraham*, 693 F. App'x 59 (2d Cir. 2017).

a.  Sections 727(a)(2) and 727(a)(4)

Appellant argues that Appellee's "convenient" omission of her 2480 Savings Account from her initial bankruptcy filings, as well as her failure to disclose information regarding Orange Shop, forms the basis to deny discharge of Appellee's debt under §§ 727(a)(2) and (a)(4).  (*See* Appellant's Br. 5, 7; Compl. ¶¶ 60–65.)  As with Appellant's other claims, the Bankruptcy Court held that Appellant failed to produce evidence demonstrating that Appellee "acted with the intent to hinder, delay, or defraud [Appellant]," as required to make out a claim under § 727(a)(2), (Tr. 67:1–19), and that Appellant "did not provide evidence to establish that [Appellee] made a material false oath knowingly and fraudulently," as required to make out a

claim under § 727(a)(4), (*id.* 70:17–24).   The Court once again agrees with the Bankruptcy Court.

First, § 727(a)(2) provides that a debt is not dischargeable if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has . . . transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2); *see also In re Kran*, 493 B.R. at 407 (same).  "To prove a § 727(a)(2) violation, a creditor must show an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor), and the party seeking to bar discharge must prove that *both* of these components were present during the one-year period before bankruptcy."  *In re Bruno*, No. 22-10822, 2023 WL 3139919, at *4 (Bankr. S.D.N.Y. Apr. 27, 2023) (emphasis in original) (internal quotation marks omitted); *see also Swakeen v. Pandian*, No. 22-CV-4710, 2023 WL 3391056, at *3 (E.D.N.Y. May 11, 2023) (same), *aff'd*, No. 23-843, 2024 WL 726881 (2d Cir. Feb. 22, 2024).

Second, under § 727(a)(4), a debt is not dischargeable, as relevant here, if "the debtor knowingly and fraudulently . . . made a false oath or account[,] . . . or . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4).  To prove an objection to discharge under § 727(a)(4)(A), a creditor must show, "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case."  *In re Mattei*, 2024 WL 1598225, at *5 (quoting *In re Abraham*, 693 F. App'x at 61); *In re Drummon*, 2025 WL 1327191, at *5 (same).

"[R]epresentations made in bankruptcy petitions count as statements made under oath for the purposes of [§] 727(a)(4)(A)." *In re Drummon*, 2025 WL 1327191, at *5.

Fraudulent intent may be established by "evidence of either (1) actual intent to deceive or (2) reckless disregard for the truth," but "will not be found in cases of ignorance or carelessness." *United General Title Ins. Co. v. Karanasos* (*In re Karanasos*), No. 13-CV-7153, 2014 WL 4388277, at *11 (E.D.N.Y. 2014) (citing first *Adler v. Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y.2008), then *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008)); *Brisman v. Ahmed (In re Parasam)*, 647 B.R. 1, 21 (E.D.N.Y. 2022) (noting that an objector must "show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions . . . .").

The record here cannot establish a denial of discharge claim under either section of 727(a). First, Appellee's alleged failure to disclose information regarding Orange Shop is belied by the record, as it is undisputed that Appellee *did* disclose such information in her bankruptcy filings. (Appellee's 7056-1 ¶ 3; Appellant's 7056-1 ¶ 3; Chapter 7 Petition 12; Tr. 67:3–8.) Second, even assuming that Appellee's omission of her 2480 Savings Account from her initial bankruptcy filings qualifies as either a potential concealment or a false oath sufficient to make out a claim under §§ 727(a)(2) or (a)(4), Appellant has once again failed to point to any evidence of Appellee's intent to deceive. Rather, Appellant only points to *the omission itself* as evidence of fraud. *See In re Drummon*, 2025 WL 1327191, at *6 (noting that the "assertion that [debtor's] omission is fraudulent because it is an omission is circular" and insufficient to demonstrate fraud). This omission, without more, is insufficient to establish that Appellee left off the 2480 Savings Account with the specific intent of defrauding her creditors. Accordingly, the Court

affirms the Bankruptcy Court's grant of summary judgment. *See Swakeen*, 2023 WL 3391056, at *3 (affirming the bankruptcy court's grant of summary judgment on §§ 727(a)(2) and (a)(4) claims where "[i]t [was] clear from the record that [a]ppellant failed to meet his burden to establish . . . that [a]ppellees concealed assets or falsified information in their Chapter 7 proceeding" and where "there [was] no evidence in the record to suggest that [a]ppellees were intentionally untruthful at the time they filed for Chapter 7 bankruptcy"); *cf. In re Drummon*, 2025 WL 1327191, at *6–7 (affirming the bankruptcy court's dismissal of a § 727(a)(4) claim where the plaintiff only made conclusory allegations of fraud).

### b.  Section 727(a)(3)

Finally, the Bankruptcy Court found that Appellant had not "[met its] burden to establish that [Appellee] failed to keep or preserve information," as required to support a claim under 727(a)(2)(3).  (Tr. 68:11–18.)  The Court agrees.

Section 727(a)(3) provides that a debt is non-dischargeable if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3).  Because "[t]he purpose and intent of [§ 727(a)(3)] . . . is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs," *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (quoting *In re Underhill,* 82 F.2d 258, 260 (2d Cir. 1936) (alteration in original)), "[t]he objecting party is not required to demonstrate that, in failing to produce its records, the debtor intended to hide its financial condition," *In re Bruno*, 2023 WL 3139919, at *5; *see also Aspire Fed. Credit Union v.*

*Robinson (In re Robinson)*, 595 B.R. 148, 158 (Bankr. S.D.N.Y. 2019) ("Intent to defraud is not an element of [§] 727(a)(3).").

To make a threshold showing under § 727(a)(3) that discharge should be barred, the party objecting to discharge must show: "(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'" *Jacobowitz v. Cadle Co.* (*In re Jacobowitz*), 309 B.R. 429, 436 (S.D.N.Y. 2004) (quoting *Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3d Cir. 1992)); *In re White*, No. 12-11847, 2015 WL 9274771, at *3 (Bankr. S.D.N.Y. Dec. 18, 2015) ("The initial burden of going forward with the evidence rests with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." (internal quotation marks and citation omitted)).  If a showing of absence is made, "the burden falls upon the bankrupt to satisfy the court that h[er] failure to produce them was justified." *In re Steinberg*, 2017 WL 1184314, at *8 (citing *In re Cacioli*, 463 F.3d at 235); *see also In re Simone*, 2022 WL 393359, at *34 (same).

Appellant fails at the threshold step.  Again, Appellant points to the purported omission of Orange Shop's records and the initial omission of the 2480 Savings Account as evidence that Appellee failed to keep and preserve information relevant to her financial condition.  (*See* Compl. ¶¶ 62–64.)  But, as noted above, Orange Shop was properly listed on Appellee's petition, and Appellant does not explain how Appellee's initial failure to disclose the 2480 Savings Account equates to a failure to *retain or preserve* relevant information.[9]

---

[9] Moreover, Appellee's counsel represents that Appellee has produced thousands of pages of documents in response to Appellant's discovery requests, including information regarding Orange Shop, (Appellee's Br. 28–29), which cuts against Appellant's claim, *cf. In re Simone*, 2022 WL 393359, at *34 (denying discharge where the debtor did "not produce[] a single

In other words, Appellant has not pointed to any absence of records sufficient to deny discharge under § 727(a)(3).  *See In re Worrell*, No. 08-21312, 2009 WL 3768850, at *2–3 (Bankr. D. Conn. Nov. 10, 2009) (denying a § 727(a)(3) claim where the plaintiff "failed to produce sufficient evidence" that the debtor "fail[ed] to keep records"), *aff'd*, No. 10-CV-14, 2010 WL 3023824 (D. Conn. Aug. 2, 2010).  Accordingly, the Court concludes there is no evidence in the record to support this claim and thus, affirms the Bankruptcy Court's grant of summary judgment.

### III.  Conclusion

For the foregoing reasons, Appellant's appeal is denied and the Bankruptcy Court Order is affirmed.  The Clerk of Court is respectfully directed to terminate the pending appeal (Dkt. No. 1), and close the case.

SO ORDERED.

Dated:    September 18, 2025
          White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        United States District Judge

---

original document in this Adversary Proceeding, whether that be a contract, bank statement, check, credit card statement, sale agreement or any other document" (emphasis omitted)); *In re Racer*, 580 B.R. 45, 52 (Bankr. E.D.N.Y. 2018) (denying a discharge where, in response to discovery requests, the debtor "did not produce any bank statements of [the relevant] accounts"); *In re Gormally*, 550 B.R. 27, 50–51 (Bankr. S.D.N.Y. 2016) (denying discharge where the debtors produced no information regarding his assets or the valuation of those assets).